IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ARMAND L. SMITH, BRAZOS**
**BRAVO ROYALTY TRUST AND**
**RIO PETRO, LTD., individually**
**and on behalf of all others**
**similarly situated private royalty**
**and overriding royalty owners,**

      **Plaintiffs,**
  vs.                                                      Civ. No. 13-468 JCH/CG

**HESS CORPORATION,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Plaintiffs' Motion for Reconsideration* [Doc. 176] of the Court's Memorandum Opinion and Order filed as Doc. 169 on September 23, 2015 ("Order"). Defendant Hess Corporation ("Hess") filed a Response [Doc. 177], and Plaintiffs filed a Reply [Doc. 178].

Having reviewed the motion, briefs, case record, and relevant law, the Court concludes that the motion should be granted in part and denied in part.

## PROCEDURAL BACKGROUND

The Complaint asserts three claims: (1) Breach of Contract and of the Covenant of Good Faith and Fair Dealing; (2) Breach of Implied Covenant To Market; and (3) Declaratory Judgment and Injunction. [Doc. 1] Plaintiffs filed the *Motion for Partial Summary Judgment No. 1*, requesting an order holding that Hess is liable for breach of contract and breach of duty to

market.  [Doc. 80]  Plaintiffs filed *Plaintiffs' Motion for Partial Summary Judgment No. 2*, requesting the Court to hold that Hess is not entitled to deduct either production or post-production expenses in calculating royalties or in determining damages.  [Doc. 106]

The Court issued its Memorandum Opinion and Order on September 23, 2015 ("Order"). [Doc. 169]  The Order granted Plaintiffs' *Motion for Partial Summary Judgment No. 1* to the extent Plaintiffs requested a holding that Hess is liable for breach of contract under Count 1, but denied summary judgment on the issue of whether Hess breached the implied duty to market as asserted under Count 2.  The Order denied *Plaintiffs' Motion for Partial Summary Judgment No. 2*.

On January 29, 2016, Plaintiffs filed *Plaintiffs' Motion for Reconsideration*.  [Doc. 176] On July 25, 2016, Hess filed a notice of supplemental authorities.  [Doc. 183]  On July 28, 2016, Plaintiffs filed a response.  [Doc. 185]

## DISCUSSION

Plaintiffs' motion for reconsideration argues that the Court erred in:  (I) concluding that post-production expenses can be deducted from wellhead sales, and (II) concluding that Plaintiffs failed to show they are entitled to partial summary judgment holding Hess liable on Plaintiffs' claim of breach of an implied duty to market. [Doc. 176]

**(I) Deduction of Post-Production Expenses from Wellhead Sales**

Plaintiffs contend:  "The Court's Memorandum Opinion and Order appears to hold that Hess is entitled to deduct post-production costs in calculating royalties based on wellhead sales, a principle contrary to New Mexico law and the uniform law in other states."  [Doc. 178, p. 3] The Court did not so hold.  Plaintiffs request that the Court "modify its Order to state that post-

production expenses are inapplicable to royalty based on the Hess to Linde wellhead sales of WBDU $CO_2$." [Doc. 176, p. 7]  Plaintiffs' request is based on a misinterpretation of the Court's Order; no modification is warranted.

First, Plaintiffs fail to recognize that in Section II(A) of the Order the Court was addressing the issue raised by the parties; there was no issue raised, and no argument made by Hess, that it could deduct post-production costs from Linde sales or any wellhead sales by Hess. Second, Plaintiffs fail to recognize that the Court's discussion in that section was limited to the Kinder Morgan purchases.  Third, Plaintiffs take the Court's statements out of context and then request the Court to limit the statements to the context in which they were made.

In the section of the Order to which Plaintiffs object (Section II(A)), the Court was discussing the issue raised by the parties:  deduction of post-production costs from Kinder Morgan purchases.  Thus the Court stated:  "To the extent that Plaintiffs contend that the Kinder Morgan price should be used to calculate WBDU royalty, the Court concludes that New Mexico law would allow Hess to deduct post-production costs."  [Doc. 169, p. 19 (footnote omitted)] Plaintiffs, however, object to what they characterize as a "flat statement" later in that section: "'The matter of law decided by the Court at this time is that Hess may deduct post-production costs, but not production costs.'"  [Doc. 176, p. 6 (quoting Order, Doc. 169, p. 19]]  Plaintiffs fail to read this statement in context.  In Section II(A) of the Order, the Court referred nine times to the Kinder Morgan purchases—and not once to the Linde sales. [Doc. 169, pp. 17-19]  Plaintiffs state that the "Court's analysis does not focus on the sale by Hess to Linde," [Doc. 176, p. 6] but then illogically assume that Section II(A)—after discussion directed only at Kinder Morgan purchases—states a conclusion applicable to Linde sales.  The reason that Section II(A) did not even mention the Linde sales is that the Court was addressing only the argument about the

Kinder Morgan purchases; the conclusion stated at the end of this section obviously refers only to the subject of discussion—the Kinder Morgan purchases.  Similarly, in the "Conclusion" section of the Order, the Court summarized the conclusion reached in Section II(A). [Doc. 169, p. 24]

Based on Plaintiffs' misreading of the Order, and taking statements out of context, Plaintiffs contend that the Court addressed an argument not made by the parties and made a ruling unsupported by law.  The Court, however, was addressing the argument made by the parties and cited law in support of its ruling.  Since a reasonable reading of the Order does not even suggest the ruling to which Plaintiffs object, the Court denies Plaintiffs' request that the Court modify a "ruling" which the Order did not make.

**(II) Duty To Market**

Plaintiffs moved for partial summary judgment "holding that [Hess] is liable for … breach of its duty to market." [Doc. 80, p. 1]  To understand the holding Plaintiffs asked the Court to make, the Court reviews Plaintiffs' arguments and the Complaint.  Count 2 of the Complaint asserts:

> 41.  As a lessee and working interest owner, defendant is subject to an implied covenant to market which is meant to benefit and extends to plaintiffs and all class members.  At all times defendant was and is obligated, among other things, to act with due regard for the rights and interests of the class members <u>and to achieve and to value Royalty based on the greatest price and the greatest value for $CO_2$ produced from the Unit that is reasonably possible under the circumstances.</u>

[Doc. 1, pp. 10-11 (emphasis added)]  Plaintiffs' motion asserts that Hess had not just a duty to market at any price, or at a reasonable price—but a duty to obtain the highest price possible:

> The duty requires a producer to sell or market <u>to obtain the best prices and terms available</u>.

4

> Under *Libby* and *Darr*, Hess owed plaintiffs the duty to … (2) diligently market WBDU $CO_2$ <u>so plaintiffs can secure the best royalty payment possible</u>.
>
> The fact that royalties are to be paid on the highest price achieved for like product under similar conditions is entirely consistent with the obligation Hess has under <u>the duty to market to achieve the highest possible price</u> for itself and for its royalty owners.
>
> Hess … has made no effort to market the $CO_2$ or <u>to achieve the highest possible price</u>.

[Doc. 80, pp. 14-15 (emphasis added)]

The Unit Agreement could have provided—but does not—that Hess must sell "at the best price possible."[1]  In absence of an express provision requiring sales "at the best price possible," Plaintiffs argue that there is an implied duty under New Mexico law to sell at the "highest possible price."  As the Court interprets Plaintiffs' motion for summary judgment and motion for reconsideration, Plaintiffs request that the Court hold Hess liable for breach of the duty as asserted in Count 2 of the Complaint:  the duty to market at the "highest possible price."  But to be entitled to summary judgment as requested, Plaintiffs first would have to show that New Mexico recognizes that the implied duty to market includes the duty to obtain the "highest price possible."

The Order discussed the authority cited by Plaintiffs' summary judgment motion for this proposition, concluding that Plaintiffs' authority did not support an implied duty to obtain the highest possible price, under New Mexico law. [Doc. 169, pp. 10-11]  Plaintiffs cited a case decided under Oklahoma law, which is not relevant to New Mexico law.  *Watts v. Atl. Richfield Co.*, 115 F.3d 785, 794 (10th Cir. 1997) (applying Oklahoma law).  Plaintiffs also cited two New Mexico cases—neither of which supported Plaintiffs' assertion that New Mexico recognizes a

---

[1] In contrast, an article cited by Plaintiffs [Doc. 176, p. 11] observes that some operating agreements provide for sales "at the best price obtainable."  John R. Reeves & J. Matthew Thompson, *The Development of the Model Form Operating Agreement:  An Interpretative Accounting*, 54 Okla. L. Rev. 211, 260 (Summer 2001).

duty to obtain the "highest possible price." *Libby* states that the lessee "must proceed <u>with reasonable diligence,</u> as viewed from the standpoint of a <u>reasonably prudent operator</u>, having in mind his own interest as well as that of the lessor, to market the product." *Libby v. De Baca*, 1947-NMSC-007, ¶ 7, 179 P.2d 263, 265 (emphasis added). *Darr* states that the implied covenant is "to use <u>reasonable diligence</u> in marketing the mineral water." *Darr v. Eldridge*, 1959-NMSC-093, ¶ 9, 346 P.2d 1041, 1043 (emphasis added). Thus Plaintiffs showed only that New Mexico recognizes an implied duty to market, under which the standard is that of a "reasonably prudent operator" employing "reasonable diligence." This standard is not the same as a duty to obtain the "highest possible price"; these standards have been distinguished by leading authorities and in the caselaw. *See* 2 Nancy Saint-Paul, *Summers Oil & Gas* § 17:19 (3d ed. updated 2015) (distinguishing a number of different possible measures of the lessee's duty to market: "at the highest possible price, the best price currently available, the prevailing market price, or merely at a price that is reasonable in light of other similar transactions" (footnotes citing cases omitted)); see 8 Howard R. Williams & Charles J. Meyers, *Oil & Gas Law* § 853 (updated 2015) (discussing Texas cases distinguishing duty to "obtain the best and highest price reasonably obtainable" from standard of "reasonably prudent operator"); 8 Williams & Meyers, *Oil & Gas Law* § 806 ("In summary, the prudent-operator standard has the same function in oil and gas litigation as the reasonable man standard has in negligence litigation."); *Yzaguirre v. KCS Res., Inc.*, 53 S.W.3d 368, 373-74 (Tex. 2001); *Texas Oil & Gas Corp. v. Hagen*, 683 S.W.2d 24, 29 (Tex. App. 1984) (requiring duty to obtain highest price), *aff'd in part*, 1987 WL 47847, *3 (Tex. 1987) (unpublished) (disapproving fiduciary duty and distinguishing duty to act as reasonably prudent operator), *opinion withdrawn*, 760 S.W.2d 960 (Tex. 1988) (withdrawn because of settlement).

Plaintiffs' summary judgment motion thus cited authority that the standard for an implied covenant to market under New Mexico law is that of "reasonably prudent operator"—but then Plaintiffs asked the Court to hold that Hess had breached an implied duty to market "at the highest possible price."  By failing to establish that there existed a duty to market "at the highest possible price" under New Mexico law, Plaintiffs failed to establish that they were entitled to judgment as a matter of law that Hess breached a duty to market "at the highest possible price," as asserted in Count 2.

In their motion for reconsideration, Plaintiffs admit that "New Mexico courts have not ruled on whether the duty to market includes a duty to achieve the highest possible price."  [Doc. 176, p. 14]  Despite their failure to cite New Mexico authority that the duty to market requires selling at the "highest possible price," and their failure to cite Tenth Circuit authority holding this is the law in New Mexico, Plaintiffs again request the Court to hold that this is the law in New Mexico.  To support this request, Plaintiffs now cite *Anderson Living Trust v. WPX Energy Production Co.*, 312 F.R.D. 620, 2015 WL 9703298 (D.N.M. Dec. 31, 2015).  [Doc. 176, pp. 3, 15]

*Anderson Living Trust* constitutes non-binding authority, decided three months after this Court's Order was filed.  The Court observes that *Anderson Living Trust* recognizes that "New Mexico courts have not specifically stated that the implied duty to market includes a specific duty to obtain the highest price reasonably possible."  312 F.R.D. at 652; *see id.* at 653-54. *Anderson Living Trust* concludes that "Tenth Circuit precedent does not limit the Court from concluding that New Mexico courts would adopt such a standard."  *Id*. at 656.  The Court notes that *Anderson Living Trust* acknowledged that courts have applied "varying standards" for the implied duty to market, and distinguished a "duty 'to obtain the best price and terms available'"

from "a prudent-operator or due-diligence standard." *Id*. at 653 (citing Oklahoma standard as duty to obtain best price, followed by "[i]n comparison," Mississippi's prudent-operator standard). *Anderson Living Trust* tentatively opines that New Mexico "would likely adopt" the requirement that "the reasonably prudent operator standard requires a lessee to secure the highest obtainable price," and concludes that "the Plaintiffs could make a claim that the Defendants breached the implied duty to market" while explicitly stating that this did not constitute a decision "whether the Plaintiffs can prevail on this claim." *Id*. at 654 & n.11.

The Court observes that *Anderson Living Trust* did not rule that there had been a breach of the duty. That case is in a very different procedural posture; the ruling is limited to certifying a class on the basis of a claim of breach of duty to obtain the highest possible price. A decision on class certification is not a decision on the merits. *See Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, ___ U.S. ___, ___, 133 S. Ct. 1184, 1195, 185 L. Ed. 2d 308 (2013); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010). After carefully reviewing and considering *Anderson Living Trust*, this Court is not persuaded by Plaintiffs' argument here. The Court concludes that Plaintiffs have not carried their burden to show that they are entitled to judgment as a matter of law, and thus will not grant Plaintiffs partial summary judgment on liability for breach of a duty to market at the "highest possible price" as asserted in Count 2.

Plaintiffs also argue that the Court erred in relying on *Elliott Industries* and in concluding that the express terms of the Unit Agreement preclude an implied duty to market. Plaintiffs argue that the New Mexico Supreme Court's opinion in *Davis* means that there is always an implied duty to market, in every contract, in spite of any express agreement inconsistent with such a duty. [Doc. 176, p. 10] *Davis v. Devon Energy Corp.*, 2009–NMSC–048, ¶¶ 32-35, 218 P.3d 75, 85-86. The Court disagrees. As Hess argues, express contract provisions may preclude

implication of a duty in law as well as a duty in fact.  [Doc. 177, pp. 11-12]  *See Sanders v. FedEx Ground Package Sys.*, 2008-NMSC-040, ¶¶ 7-8, 188 P.3d 1200, 1203 (holding that every contract imposes duty of good faith and fair dealing, but this implied covenant "cannot be used to overcome or negate an express term contained within a contract"); *Anderson Living Trust*, 312 F.R.D. at 655-56 & n.13 (acknowledging that there can be "a lease provision overriding the implied duty to market," e.g., when contract includes shut-in royalty clause); 8 Williams & Meyers, *Oil & Gas Law* § 803 (discussing *Davis* and explaining that parties can contract out of a covenant implied in law).

  Having reconsidered the previous Order, however, the Court concludes that its determination that an express provision precluded implication of a duty to market in this case was based on a misapprehension of the parties' arguments and contract.  As the Court previously interpreted the Unit Agreement and the parties' positions, the Unit Agreement allowed Hess to use or sell $CO_2$ and Plaintiffs' objection was to the value of their royalties, not to Hess's failure to sell.  Plaintiffs explain that is not their position, and they assert under Count 2 that Hess was required both to sell and to obtain "the highest possible price."[2]  The Court now concludes that there is an implied duty to market in this contract; this reconsideration, however, does not alter the Court's ultimate conclusion.  As discussed above, Plaintiffs have not shown that they are entitled to partial summary judgment for breach of an implied duty to market as asserted under Count 2, because Plaintiffs fail to support their assertion that the duty to market under New Mexico law includes a duty to obtain the "highest possible price."

---

[2] Although Plaintiffs contend that neither party argued that Hess had the right to use and not sell, Hess did set forth that defense in the Pretrial Order (citing § 7.6 of the Unit Agreement), the response to Plaintiffs' summary judgment motion, and the response to Plaintiffs' motion for reconsideration.  [Doc. 153, p. 7; Doc. 89, p. 21; Doc. 177, pp. 9-10]

At any event, Plaintiffs would have to prove more than the mere fact Hess failed to sell the $CO_2$ (after the Linde sales). This factual issue, which is undisputed, does not, by itself, establish breach of an implied duty to market—unless there were an absolute duty to sell, which Plaintiffs do not argue and which appears inconsistent with the standard of a "reasonably prudent operator" exercising "reasonable diligence." *See* 8 Williams & Meyers, *Oil & Gas Law* § 806 (contrasting absolute standard for determining compliance with implied covenants with prudent-operator standard applied by New Mexico along with great majority of other jurisdictions). Plaintiffs' motion fails to identify evidence that Hess could have sold and obtained a higher price upon which to calculate royalties, nor do Plaintiffs show that a reasonably prudent operator both could and should have marketed the $CO_2$. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (at summary judgment stage, party must come forward with sufficient evidence of each essential element). The Court believes that these issues are not just questions of damages, but also concern the question of whether there was a breach. *See* 8 Williams & Meyers, *Oil & Gas Law* § 855 (listing as elements of a cause of action for breach of covenant to market, "that the product could have been sold," and "proof that a prudent operator could and would have sold the production").

## CONCLUSION

The Court concludes that there is an implied duty to market in the contract at issue. The Court, however, also concludes that Plaintiffs are not entitled to partial summary judgment for breach of an implied duty to market as asserted under Count 2, because Plaintiffs failed to show that the duty to market under New Mexico law includes a duty to obtain the "highest possible price." The Court has not dismissed Count 2 but neither will the Court grant Plaintiffs partial summary judgment on Count 2.

**IT IS THEREFORE ORDERED that** *Plaintiffs' Motion for Reconsideration* [Doc. 176] is **GRANTED in part** and **DENIED in part**, as discussed above.

                                                                                             _____
                                                                                             **UNITED STATES DISTRICT JUDGE**